IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERRY DALE SAUNDERS,  )
          )
   Plaintiff,    )
          )  CIVIL ACTION NO. 1:11cv308-WC
  v.        )
          )
MICHAEL J. ASTRUE,   )
Commissioner of Social Security, )
          )
   Defendant.   )

## MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff, Sherry Dale Saunders, applied for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Her application was denied at the initial administrative level. Tr. 82-86. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled since June 10, 2008, the date the application was filed. Tr. 23. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct

of all proceedings and entry of a final judgment by the undersigned United States Magistrate

Judge.  Pl.'s Consent to Jurisdiction (Doc. #8); Def.'s Consent to Jurisdiction (Doc. #9).

Based on the Court's review of the record and the briefs of the parties, the Court REVERSES

the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and
laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id.* at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id.*  It also can contain both exertional and nonexertional limitations.  *Id.* at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id.* at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-seven years old at the time of the hearing before the ALJ. Tr. 23, 33.  Plaintiff completed high school and almost two years of college.  Tr. 23, 34, & 62. Plaintiff attempted to start her own sewing business doing custom orders, but indicated business was slow.  Tr. 18, 35.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had "not engaged in substantial gainful activity since June 10, 2008, the application date." (Step 1) Tr. 18.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease of the lumbar spine and cervical disorder." *Id.*  The ALJ then found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Step 3) *Id.*  Next, the ALJ found that Plaintiff "has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 416.967(c)."  Tr. 19.  The ALJ then found that Plaintiff "has no past relevant work."  (Step 4) Tr. 23. Considering Plaintiff's "age, education, work experience, and [RFC]," and after applying the Medical Vocational Grids, the ALJ determined "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  *Id.*  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since June 10, 2008, the date the application was filed."  *Id.*

IV.    **PLAINTIFF'S CLAIMS**

Plaintiff presents three issues for this Court's consideration in review of the ALJ's decision: (1) whether the decision should be reversed because "there is absolutely no support for the ALJ's Residual Functional capacity (RFC) assessment as the record is devoid of any RFC assessments provided by a physician[;]" (2) whether "the ALJ erred in mechanically applying the medical vocational guidelines in determining there were significant jobs existing in the national economy that [Plaintiff] could perform based on her capacity to perform a full range of medium work[;]" and (3) whether "the ALJ improperly rejected [Plaintiff's] testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments." Pl.'s Brief (Doc. #12) at 5. The Court finds that the ALJ's RFC determination warrants remand. Because the Court finds reversal is warranted on the first issue, the Court declines consideration of the other issues raised by Plaintiff.

V.    **DISCUSSION**

   ***A.    Whether the ALJ's RFC assessment is supported by substantial evidence.***

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the "the record is completely devoid of a medical assessment that supports the ALJ's RFC." Pl.'s Brief (Doc. #12) at 6. Plaintiff argues that because "the record does not contain an RFC assessment completed by a physician . . . the ALJ simply formulated his own opinion regarding [Plaintiff's] limitations." *Id.* at 7. Accordingly, Plaintiff "requests

that the Court reverse or remand her case so that a proper RFC assessment can be established." *Id.* Defendant contends that

> [r]equiring an ALJ to rely on a treating or examining physician's evaluation of the evidence effectively removes the ALJ from the residual functional capacity determination, and instead gives physicians control over the residual functional capacity assessment. By this reasoning, it is the physician who would determine the often dispositive issue of residual functional capacity – a result that is contrary to the regulations, along with the Eleventh Circuit's repeated holdings that the final disability determination must be left to the agency.

Def.'s Brief (Doc. #13) at 9.

At the administrative law judge hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a finding about the RFC. 20 C.F.R. § 404.1545(a)(3). While the ALJ has the responsibility to make a determination on Plaintiff's RFC, it is Plaintiff who bears the burden of proving her RFC. *See* 20 C.F.R. § 404.1512(a) & (c) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").

The Court agrees with the Commissioner that the ALJ is responsible for determining Plaintiff's RFC. The Court also agrees that the Eleventh Circuit has not set out a rule indicating that an RFC must be based on the assessment of a treating or examining physician

in every case.[5]  *See* Def.'s Brief (Doc. #13) at 9.  However, the Commissioner misstates the issue presented in this case.  Plaintiff argues that because there is no RFC assessment by a treating or examining physician, the ALJ's RFC determination is not supported by substantial evidence as there is no evidence on the record to explain the ALJ's assessment of Plaintiff's limitations.  Plaintiff does not argue that "an ALJ [has] to rely on a treating or examining physician's evaluation of the evidence."  Def.'s Brief (Doc. #13) at 9.  Rather, Plaintiff argues that the physician's role is to provide the evidence–by medically assessing Plaintiff's limitations–the ALJ will use when making an RFC determination.  The Court agrees with Plaintiff.  While the ALJ determines Plaintiff's RFC, Plaintiff's limitations are considered medical opinions and, as such, must be evaluated by a physician.[6]

The Court is concerned that there is not sufficient evidence on the record to support the ALJ's finding that Plaintiff has an RFC to "perform the full range of medium work."  Tr. 19.  The ALJ has an affirmative duty to develop a full and fair record.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003).  Moreover, the ALJ must ensure that a sufficient

---

[5] The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity. *See, e.g.*, *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician)

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your ***physical or mental restrictions***."  20 CFR 404.1527(a)(2) & 416.927(a)(2) (emphasis added).

record exists to evaluate the claimant's exertional and nonexertional limitations.[7]   In this

case, the only medical records before the ALJ consisted of treatment records from Plaintiff's

treating physician, Dr. Childs, and a consultative examination performed by Dr. Ellis.[8]

Neither Dr. Childs nor Dr. Ellis specifically addressed or defined Plaintiff's exertional

limitations (ability to sit, stand, walk, lift, carry, push, and pull) or her nonexertional

limitations (Plaintiff's mental abilities, her ability to reach, stoop, crouch, climb, etc.).[9]   The

ALJ accorded Dr. Childs' opinion great weight and his opinion indicates he incorporated Dr.

Childs' assessment into Plaintiff's RFC.  Tr.  22.  Plaintiff reported to Dr. Childs due to her

back pain in 2006 and 2008.[10]   The ALJ referred Plaintiff to Dr. Ellis for a consultative

examination in July 2008.[11]   A month later, in August 2008, Plaintiff was referred for an MRI

---

[7] See SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996) (noting that ALJs "must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC," and that "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual").

[8] The Court agrees with the ALJ that the consultative examination performed by Dr. Ellis "supplemented" the medical record.  Tr. 20.  However, the examination did not assess Plaintiff's exertional and nonexertional limitations.

[9] Exertional limitations are defined as those restrictions affecting a person's ability to meet what the Social Security Administration considers the seven strength demands of a job:  sitting, standing, walking, lifting, carrying, pushing, and pulling.  Social Security Ruling 96-9P, 1996 WL 374185 at *5 (July 2, 1996).  Nonexertional limitations, on the other hand, relate to limitations that affect capacities such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching and the like.  Id.  Environmental restrictions are also considered to be nonexertional limitations.  Id.

[10] In 2006, Dr. Childs' assessment indicated:  "cervical disorder" and "muscle spasm."  Tr. 198. In 2008, Dr. Childs' assessment indicated:  "left injury to sciatic nerve; muscle spasm; musculoskeletal neck disorder; back pain; and sciatica."  Tr. 195.

[11] Dr. Ellis diagnosed "undiagnosed low back pain and cervical disorder."  Tr. 201.

by Dr. Childs.[12]  In 2010, Plaintiff again reported to Dr. Childs, who advised Plaintiff to "avoid heavy lifting."  Tr. 209.  Discussing Dr. Childs' assessment, the ALJ noted,

> There is no evidence that Dr. Childs intended this [heavy lifting] restriction to be permanent as he based it on the claimant's infrequent symptoms and need for treatment.  Moreover, he apparently did not intend this as a specific evaluation of the claimant's abilities as it is very general and lacks specificity concerning the claimant's abilities and limitations.

Tr. 22.  The Court agrees that Dr. Childs' restriction is not "a specific evaluation of the claimant's abilities [and limitations]" and because there is no such evaluation of Plaintiff's abilities, the Court is unable to reconcile how the ALJ was able to conclude Plaintiff can perform a "full range of medium work."[13]  Medium work requires the ability to lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; the ability to stand or walk, off and on, for a total of approximately six hours in an eight-hour workday; use of the arms and hands to grasp, hold and turn objects; and frequent bending/stooping.  SSR 83-10; 20 C.F.R. § 404.1567(c) (2002).  It is unclear how the ALJ reached the conclusion that Plaintiff "can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently" and sit, stand and/or walk for six hours in an eight hour workday, Tr. 21, when the record does not include an evaluation of Plaintiff's ability to

---

[12] The MRI revealed "Mild scoliosis of the lumbar spine with mild hypertrophic osteoarthritic changes;" "Degenerative disc disease with disc bulges at L4-5 and L5-S1 with a bulge appearing to be asymmetric to the left with possible impingement on the origin of the left S1 nerve root;" and "Multiple bilateral renal cysts having the appearance of polycystic renal disease."  Tr. 206.

[13] The Court does not find Dr. Childs' determination that Plaintiff should "avoid heavy lifting" by itself establishes that Plaintiff is disabled, or even that she can only perform light work, but neither does it establish that she retains the ability to perform a "full range of medium work."

perform work activities such as sitting, standing, walking, lifting, bending, or carrying.[14] Accordingly, in order to fill the evidentiary gap, the ALJ should have obtained an RFC assessment for consideration in conjunction with the other evidence on the record.

The Court also notes that an error in the ALJ's RFC determination will impact the subsequent determinations at Steps Four and Five of whether or not Plaintiff can perform her previous work and whether she can perform other work in the national economy. Indeed, the ALJ's RFC determination is closely tied to another issue Plaintiff presents for this Court's consideration: the ALJ's application of the Medical Vocational Guidelines (grids).

> The general rule is that **_after determining the claimant's RFC_** and ability or inability to return to past relevant work, **_the ALJ may use the grids_** to determine whether other jobs exist in the national economy that a claimant is able to perform. However, '[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.' Therefore, [a court] must determine whether either of these two conditions exists . . . . If either condition exists, the ALJ was required to consult a vocational expert.

---

[14] The Court also notes that at the hearing, the VE indicated that Plaintiff's past relevant work could be best classified as "embroidery machine operator, which is light and unskilled, or sewing machine operator, which would be light, semi-skilled with an SVP level three" and that Plaintiff does not have any transferrable skills. Tr. 45-46. The ALJ then asked the VE about "a hypothetical individual the same age as the claimant with the same educational level and vocational history . . . [who] can perform the full range of light work. Could that person go back to the claimant's past relevant work or any part thereof?" Tr. 46. The VE indicated "[i]f those were the limitations, then the work would be generally available in the national economy." Tr. 46. The VE went on to identify the following positions: "cafeteria attendant" (light and unskilled); "parking attendant" (light and unskilled); "microfilm document preparer" (sedentary and unskilled). Tr. 46. Given this testimony, which discussed only Plaintiff's ability to perform light and sedentary work, it is unclear how the ALJ was then able to determine that Plaintiff can perform "a full range of medium work."

*Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  Before the ALJ may use the grids to determine whether Plaintiff can perform other jobs in the national economy, the ALJ must first determine Plaintiff's RFC and determine whether, based on the evidence on the record, Plaintiff can perform all exertional demands at a given level of exertion. Accordingly, an incorrect RFC determination will lead to an incorrect application of the grids.

This case is devoid of any medical opinions regarding Plaintiff's exertional and nonexertional limitations.  Because the Court finds the ALJ's RFC determination is not supported by substantial evidence, this case must be remanded.  Upon remand, a medical source should be consulted to assist the ALJ in determining Plaintiff's RFC.  The Court does not make a finding that Plaintiff is disabled, but notes that the ultimate determination of disability must be made with an appropriate RFC assessment to allow for the Commissioner's examination of the totality of the evidence.

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case is REMANDED to the Commissioner for proceedings consistent with this decision.  A separate judgment will issue.

Done this 23rd day of March, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE